## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **AKORBI BPO, LLC, and ELAHI ENTERPRISES, INC.,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **CAUSE NO. _____** |
| **GROCERY DELIVERY E-SERVICES USA INC., d/b/a HELLOFRESH,** | § § § | |
| **Defendant.** | § § | |

## ORIGINAL COMPLAINT

Plaintiffs Akorbi BPO, LLC ("**Akorbi**") and Elahi Enterprises, Inc. ("**Elahi**," and collectively, "**Plaintiffs**") file this *Original Complaint* against Defendant Grocery Delivery E-Services USA Inc., doing business as HelloFresh ("**HelloFresh**") and show as follows:

## I.
## THE PARTIES

1.      Akorbi is a limited liability company whose sole member is Elahi, with its principal place of business in Plano, Collin County, Texas.

2.      Elahi is a corporation organized and existing under the laws of Texas, with its principal place of business in Plano, Collin County, Texas.

3.      HelloFresh is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New York County, New York. Process may be served on HelloFresh by serving its Texas registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporated, at its registered office at 211 E. 7th Street, Suite 620, Austin, Texas 78701, or wherever else it may be found.

## II.
## <u>PERSONAL JURISDICTION</u>

4.      HelloFresh contractually submitted to the personal jurisdiction of any court in the

state of Texas. Section 18.1 of the MSA (as defined *infra* paragraph 19) provides in relevant part:

> For the purpose of any action or proceeding instituted with respect
> to any claim arising under this Agreement, both CLIENT
> [HelloFresh] and AKORBI hereby irrevocably consent to the
> jurisdiction of any court having subject matter jurisdiction in the
> State of Texas.

MSA, Ex. 1 ¶ 18.1, at p. 9.

5.      This Court, therefore, has personal jurisdiction over HelloFresh.

## III.
## <u>SUBJECT MATTER JURISDICTION</u>

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

7.      Elahi is a corporation organized under the laws of Texas, and its principal place of

business is in Texas. Elahi is, therefore, a citizen of Texas.

8.      Akorbi is a limited liability company. Akorbi has one member: Elahi. Because

Elahi is a citizen of Texas, Akorbi is a citizen of Texas.

9.      HelloFresh is a corporation organized under the laws of Delaware, and its principal

place of business is in New York. HelloFresh is, therefore, a citizen of Delaware and New York.

Because HelloFresh is not a citizen of the state of Texas, all plaintiffs are diverse from the

defendant under 28 U.S.C. § 1332(a)(1).

10.      The damages sought from HelloFresh in this lawsuit exceed $75,000, exclusive of

interests and costs.

11.      Therefore, the Court has subject matter jurisdiction over this lawsuit pursuant to 28

U.S.C. § 1332 because it is between citizens of different states and the amount in controversy

exceeds the sum or value of $75,000.

---

12.     Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201. Count 3 is for declaratory judgment for claims involving contracts and other alleged rights and obligations, the amount at issue in the declaratory requests substantially exceeds $75,000, exclusive of interests and costs, and an actual and justiciable controversy exists between Plaintiffs and HelloFresh concerning the rights, responsibilities, and obligations of the parties to this lawsuit.

13.     Therefore, the Court also has subject matter jurisdiction over Plaintiffs' requests for declaration under 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

## IV.
## VENUE

14.     HelloFresh contractually waived any right it may have had to object to venue in any court in the State of Texas. Specifically, Section 18.1 of the MSA also provides in relevant part as follows:

> In connection with any suit, action or proceeding instituted in any state or federal court located in the State of Texas, CLIENT [HelloFresh] hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such court has been brought in an inconvenient forum.

MSA, Ex. 1 ¶ 18.1, at p. 9.

15.     Venue is otherwise proper in the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims and declaratory relief sought occurred in this district and division.

16.     In the alternative, venue is proper in the Eastern District of Texas, Sherman Division pursuant to 28 U.S.C. § 1391(b)(3) because HelloFresh is subject to the Court's personal jurisdiction in this district and division for the claims and requests for declarations in this action.

## V.
## FACTUAL BACKGROUND

17.     Elahi and Akorbi are headquartered in Plano, Texas. Through its subsidiaries, Elahi is among the largest woman-owned and led companies in Texas and has been one of the fastest-growing language-service providers in the world since 2003. Akorbi specializes in providing solutions for its clients, including multilingual and technical staffing, inbound and outbound telemarketing services, and technological solutions to eliminate language barriers.

18.     HelloFresh purports to be "America's #1 meal kit, offering the widest variety of recipes to over a million customers around the [United States]."[1]

19.     Akorbi and HelloFresh entered into a *Master Service Agreement* (the "**MSA**") on or about July 13, 2018. The MSA without its internal exhibits is attached as **Exhibit 1**.

20.     The MSA is the primary governing agreement for the provision to HelloFresh of "certain contact center and support services …, as such services may be agreed by CLIENT [HelloFresh] and AKORBI from time to time and documented in separate Statements of Work." MSA Ex. 1 at p. 1.

21.     The MSA contains several provisions that are relevant to the claims and requests for declarations from the Court. These include:

> 2.1 ***Ownership***. Client [HelloFresh] represents and warrants that it
> is the owner of the CRM (Customer Relationship Management)

---

[1] HelloFresh, Learn More About Our Meal Kit Delivery Service: Why Choose HelloFresh for Your Meal Kit Service?, https://www.hellofresh.com/?mealsize=4-2&featured=chefschoice&c=VQ-UDR3IZTK2&gclid=CjwKCAiAmrOBBhA0EiwArn3mfMcThSGVuKvnac-9lTRW7K_UDfFfutHxvti1kE3YowOziCXVaMXb-BoCMJ8QAvD_BwE (last visited February 17, 2021).

Software Platform and … each and every component thereof, or the recipient of a valid license thereto, and that it has and will maintain the full power and authority to grant the rights granted in this Agreement without the further consent of any third party. [HelloFresh] retains all right, title and interest in the Software Platform, including but not limited to the customer data.

MSA, Ex. 1 ¶ 2.1, at p. 2.

4.2    In performing its obligations under this Agreement, AKORBI will be entitled to rely upon any routine instructions, authorizations, approvals or other information provided to AKORBI by Client [HelloFresh].

MSA, Ex. 1 ¶ 4.2, at p. 3.

14.1 ... Nothing contained herein shall prohibit AKORBI from assigning its obligations hereunder to a subsidiary or other related entity....

MSA, Ex. 1 ¶ 14.1, at p. 8.

16.1    Client [HelloFresh] agrees to abide by the TCPA Telemarketing guidelines as well as the guidelines set out in this agreement;

MSA, Ex. 1 ¶ 16.1, at p. 8.

20.1    ***Events of Default***. The following events shall constitute events of default ("Events of Default") under this Agreement:

(a) a failure by Client [HelloFresh] to pay any amount due to AKORBI when due;
(b) a failure by either party ("Defaulting Party") to perform one or more material obligations under this Agreement;
(c) a breach of either party of a material representation, warranty, covenant or condition under this Agreement; or
(d) a filing by either party under bankruptcy or insolvency laws.

MSA, Ex. 1 ¶ 20.1, at p. 10.

20.2    ***Rights Upon Event of Default***. Upon the occurrence of an Event of Default, the other party ("Non-Defaulting Party") may deliver written notice thereof to the Defaulting Party of its decision to terminate this Agreement. The Defaulting Party shall thereafter

> have thirty (30) days to cure such breach or, if such breach is not curable within the thirty (30) day period, then to commence a cure, provided such cure shall be pursued to a prompt conclusion. If such breach is not cured within such thirty (30) days, the Non-Defaulting Party shall thereafter have the right to terminate this Agreement as specified in its notice of default.

MSA, Ex. 1 ¶ 20.2, at p. 10.

> 20.5   ***Early Termination without Default***. Either party may <u>terminate</u> this Agreement by giving not less than forty-five (45) days prior written notice thereof to the other party.

MSA, Ex. 1 ¶ 20.5, at p. 10.

> 21.11   ***Limited   Warranty***.   AKORBI   DISCLAIMS   ALL WARRANTIES,   EXPRESS   OR   IMPLIED,   AS   TO DESCRIPTION, Akorbi [sic], MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PRODUCTIVENESS, OR ANY OTHER MATTER, WITH RESPECT TO ANY OF THE PRODUCTS OR SERVICES SOLD BY Client [HelloFresh] PURSUANT TO THIS AGREEMENT.

MSA, Ex. 1 ¶ 21.11, at p. 12.

22.    Exhibit "A" to the MSA is the initial "*Statement of Work – 90 Day Pilot Program*" (the "**First SOW**"). The First SOW is attached as **Exhibit 2**.

23.    The First SOW more specifically describes the services provided to HelloFresh as "various outbound sales, retention, loyalty, win-back, etc. telemarketing to [HelloFresh] food service customers using English and Spanish speaking agents from Santo Domingo, Dominican Republic" (the "**Services**"). First SOW Ex. 2 at p. 1. The Services were initially to be provided only as a " 'pilot program' which will serve as a proof of concept for the outbound sales program." First SOW Ex. 2 at p. 1. The pilot program described in the SOW was for ninety (90) days (the "**Term**"). First SOW Ex. 2 at p. 1.

24.    The First SOW requires, among other things, the following (the "**Calling List Provision**"):

> **Specialized Equipment:** The client [HelloFresh] will provide …
> the required data files (calling lists) ….

First SOW, Ex. 2 at p. 1.

25.     In sum, HelloFresh was the sole obligor to ensure that each phone number it provided would not violate the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "**TCPA**") when dialed based on (a) the "Specialized Equipment" provision in the First SOW, (b) paragraph 16.1 of the MSA, (c) HelloFresh's legal obligation to comply with the TCPA, (d) HelloFresh's directive to use a specific dialing system – Five9 – for the Services, (e) HelloFresh's knowledge of the manner in the Five9 dialing system worked, (f) HelloFresh's knowledge of how its CRM and the Five9 dialing system worked together, and (g) the parties' course of conduct.

26.     HelloFresh's delivery of each calling list also constituted a representation by HelloFresh that the phone numbers on that list would not trigger any liability under the TCPA.

27.     As allowed by Section 14.1 of the MSA, Akorbi assigned some or all of its obligations to perform the Services to Elahi. In connection with the delivery of the Services under the MSA and the First SOW, Elahi entered into the following contracts with LCBNet SRL, a Dominican Republic Company: a *Master Services Agreement*, a related *Statement of Work*, and a *Master Outsourcing Services Agreement* (the "**LCBNet MSA**" "**LCBNet SOW**" and "**LCBNet MOSA****,**" respectively). A substantial part of the Services provided to HelloFresh was accomplished through the LCBNet MSA, LCBNet SOW, and LCBNet MOSA.

28.     Soon after the MSA and the First SOW were executed, HelloFresh exhibited a relative lack of competence in the proper operation of an outbound-telemarketing program.

29.     For example, the original program launch date was postponed due to a loss of key personnel in HelloFresh's "back office" data and analytics team, which was responsible for

managing their customer data and information directly related to HelloFresh's calling lists.  Due to this personnel loss, the program with Akorbi was postponed while HelloFresh worked to backfill some of these key positions.

30.     During one of the initial program-launch meetings, HelloFresh introduced Lauren Gigante ("**Ms. Gigante**") as its vendor manager.  HelloFresh informed Akorbi that Ms. Gigante was "brand new" to the outbound-telemarketing industry and that her experience was from HelloFresh's "inbound" sales or marketing area.

31.     Ms. Gigante routinely failed to comply with the MSA and SOW's by continually delivering calling lists and HelloFresh's dialing strategy in inconsistent ways: sometimes verbally, other times via WhatsApp, and yet other times via e-mail. She further failed to follow the chain of command established with Plaintiffs, such as communicating directly with the assigned program account manager and failing to participate in the weekly client program management meeting; instead, she often reached out to a subcontractor not designated to receive the calling lists with instructions regarding the calling lists. Plaintiffs routinely monitored Ms. Gigante's directives and often had to take remedial steps to ensure that her directives went to the proper Akorbi worker or subcontractor. In hindsight, HelloFresh was not prepared for its substantial role in the outbound-telemarketing program.

32.     Despite these and other issues that HelloFresh had with meeting their obligations, the Services were provided to HelloFresh's satisfaction during the initial Term. HelloFresh accordingly requested a 30-day extension, to which Akorbi agreed. This extension is outlined in the "*Extension of Exhibit "A" SOW 90 Day Pilot Program between HelloFresh and Akorbi BPO*" (the "**Second SOW**"). The Second SOW is attached as **Exhibit 3**.

33.     Continuing to be satisfied with the Services, HelloFresh requested another extension for 90 days. Akorbi agreed to the extension in the "*Pilot Program Extension and Revised Statement of Work*" (the "**Third SOW**"). The Third SOW is attached as **Exhibit 4**. The Third SOW also contained the Calling List Provision.

34.     After the end of the Term as then extended, HelloFresh was so satisfied with the Services that it requested that the Term be extended for a full year, with HelloFresh having the right to renew this term in one-year increments. HelloFresh also asked that the "pilot" program be transitioned to a " 'production' OBTM sales program." Akorbi agreed to these terms in the "*Production Statement of Work – OBTM (Outbound Telemarketing) Sales Program*" (the "**Fourth SOW**"). The Fourth SOW is attached as **Exhibit 5**. The parties signed the Fourth SOW on July 31, 2019. It too contained the Calling List Provision.

35.     In or around early August 2019, HelloFresh asked Akorbi whether it had called Amanda Engen and stated that she had made a complaint. HelloFresh provided no other information. Akorbi researched the phone number provided by HelloFresh and confirmed that Ms. Engen's phone number was on the list provided by HelloFresh, that Ms. Engen had received a call, that Ms. Engen asked HelloFresh to placed her on its do-not-call list, and that HelloFresh advised that it had put her phone number on its do-not-call list.

36.     Shortly after the exchange regarding Ms. Engen, and less than three weeks after the execution of the Fourth SOW, HelloFresh delivered a document to Akorbi titled "*Amendment No. 1 to Exhibit "F" of the Master Agreement Grocery Delivery E-Services USA, Inc. and Akorbi BPO LLC*" ("**Amendment No. 1**"). Amendment No. 1 is attached as **Exhibit 6**. HelloFresh claimed that it required Akorbi to agree to Amendment No. 1 because Akorbi was allegedly not following HelloFresh's requested dialing strategy and HelloFresh wanted to address that issue in writing.

HelloFresh did not indicate that there were any other issues with the Services. Notably, Amendment No. 1 allowed HelloFresh to terminate its agreement for the Services "immediately" if HelloFresh's "dialing strategy" was not followed.

37.     On September 5, 2019, within about a month of HelloFresh's inquiry to Akorbi about Ms. Engen and about two weeks after HelloFresh demanded the execution of Amendment No. 1, Ms. Engen filed a class-action lawsuit styled *Amanda Engen v. Grocery Delivery E-Services USA, Inc.*, Case No. 19-cv-02433-ECT-TNL (D. Minn.) ("the "**Engen Lawsuit**"). The Engen Lawsuit alleges that HelloFresh violated the TCPA.

38.     On November 1, 2019, HelloFresh advised Akorbi that "[p]er Amendment No. 1 to our Master Service Agreement (section (b) of 'Dialing Strategy') [*sic*] we are electing our right to terminate our Agreement, effective immediately, due to Akorbi's failure to follow our written instructions regarding dialing strategy." Based on this unilateral and immediate termination by HelloFresh, all Services ceased as of November 1, 2019.

39.     Two more class-action lawsuits were subsequently filed against HelloFresh. Each also alleged that HelloFresh violated the TCPA. These actions are: (i) *Grace Murray v. Grocery Delivery E-Services USA, Inc.*, Case No. 19-cv-12608-WGY (D. Mass.); and (ii) *Jeanne Tippett and Stephen Bauer v. Grocery Delivery E-Services USA, Inc.*, Case No. 1:20-cv-05271-PKC (S.D.N.Y.). The three class-action lawsuits are collectively referred to as the "**Underlying Litigation**."[2]

40.     The Underlying Litigation seeks relief for three types of alleged violations of the TCPA: (1) using an automatic telephone dialing system to make calls to cell phones, (2) making

---

[2] The three class-actions were consolidated into one action, with the putative class allegedly being all similarly situated people who experienced at least one of three types of purported TCPA violations between September 5, 2015 and December 31, 2019.

telemarketing calls to phone numbers on the national do-not-call registry, and (3) failing to honor HelloFresh's internal do-not-call lists.

41.     On October 20, 2020, HelloFresh, through its attorney, sent a letter (the "**Demand Letter**") to Akorbi advising that HelloFresh had been sued in the Underlying Litigation.[3]

42.     HelloFresh asserts in the Demand Letter that the Underlying Litigation exposes HelloFresh to liability "in the ***billions*** of dollars" and that, accordingly, HelloFresh believes that a recent demand from the plaintiffs in the Underlying Litigation of $14,000,000 was reasonable. Plaintiffs learned that HelloFresh accepted that offer soon after HelloFresh sent the Demand Letter.

43.     HelloFresh also claims in the Demand Letter that the language in Paragraph 12.1 of the MSA requires Akorbi to indemnify it for the claims made in, and its settlement of, the Underlying Lawsuit to the extent of the "calls made by Akorbi." HelloFresh then demanded that Akorbi indemnify it under the "MSA and/or based on equitable indemnification."

44.     The Demand Letter vaguely outlines the lead plaintiffs' claims in the Underlying Litigation and asserts that Akorbi is responsible for 29% of the "customers" who "fall within [p]laintiffs' class definitions." The Demand Letter also alleges that "[m]ost customers were called more than once." Based on these assertions, HelloFresh is presumably contending that Akorbi may be responsible for more than 29% of all calls which allegedly fall within the class definitions in the Underlying Litigation. In any event, it appears clear that HelloFresh is demanding a minimum of $4,060,000 ($14,000,000 x 0.29) from Akorbi.

45.     HelloFresh has not contacted Plaintiffs since the date of the Demand Letter.

---

[3] For clarity, Plaintiffs were aware of the Underlying Litigation prior to receiving the Demand Letter due to receiving a subpoena for documents in at least one of the lawsuits.

# VI.
## FRAUD BY NON-DISCLOSURE

46.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

47.     Shortly before August 19, 2019, HelloFresh presented Amendment No. 1 to Akorbi and demanded that it be signed. Amendment No. 1 purports to add four provisions to the Fourth SOW, even though the Fourth SOW had been effective for less than three weeks.

48.     Among other things, Amendment No. 1 purports to allow HelloFresh to "immediately terminate the [MSA]" if there is a "[f]ailure" to "follow … all reasonable written instructions from Client [HelloFresh] regarding dialing strategy." Amendment No. 1, Ex. 6 at p. 1.

49.     The Engen Lawsuit, the first of the lawsuits in the Underlying Litigation, was filed on September 5, 2019—approximately one month after HelloFresh inquired about Ms. Engen with Akorbi and a little more than two weeks after HelloFresh demanded that Akorbi agree to Amendment No. 1.

50.     Lead counsel for the plaintiff in the Engen Lawsuit is a well-known class-action attorney who "has been involved in consumer work for over a decade, including more than 100 class action lawsuits, and involved in litigation that has resulted in over $100,000,000 in settlements or judgments for consumers." He "prides himself in being personally involved in each case the firm handles, provides his direct line to each of his clients, and is always available for those he represents." The additional four attorneys and two law firms representing the class plaintiffs in the Underlying Litigation, on information and belief, similarly share excellent reputations.

51.     Based on this information, it is apparent that HelloFresh became aware of the investigation for and preparing or the Engen Lawsuit before Amendment No. 1. Wanting to avoid

the time delay and associated fees to Akorbi required by providing a 45-day notice of termination or providing a 30-day opportunity to cure, HelloFresh decided to change the terms of MSA's termination provisions.

52.     In connection with its demand that Akorbi sign Amendment No. 1, HelloFresh deliberately failed to disclose its knowledge of the full extent of the forthcoming claims and the impending litigation which became the Engen Lawsuit. Such knowledge would have been material to Akorbi's decision to agree to the terms in Amendment No. 1.

53.     HelloFresh had a duty to disclose its knowledge of the impending litigation against it involving TCPA claims. HelloFresh voluntarily disclosed some but not all the information it knew about Ms. Engen and her claim and imminent litigation.

54.     Akorbi was unaware of any investigation, demands, or other communications between counsel for the class-action plaintiffs and HelloFresh, and Akorbi otherwise did not have an equal opportunity to discover those acts.

55.     HelloFresh intended for Akorbi to sign Amendment No. 1 before Akorbi could gain knowledge of the Engen Lawsuit or the investigation leading up to the filing of that lawsuit.

56.     Had Akorbi known about the investigation of or the impending filing of the Engen Lawsuit, it would not have signed Amendment No. 1.

57.     Because Amendment No. 1 contains a provision allowing for the immediate termination upon the occurrence of a specific event, the enforcement of Amendment No. 1 would make HelloFresh's immediate termination effective if the conditions for termination under the section "Dialing Strategy" had been met (which Akorbi is not agreeing occurred). Otherwise, HelloFresh would have had to either give Akorbi (a) written notice of an alleged default with 30 days to cure such alleged breach or (b) 45-day notice of terminating the MSA without cause.

58.     Akorbi would have continued to perform under the MSA and the Fourth SOW. Accordingly, HelloFresh would have had to continue paying Akorbi for the Services during the 30-day cure period or 45-day termination period depending on the provision HelloFresh chose to use to attempt its termination of the MSA and the Fourth SOW. Had HelloFresh chosen to allow Akorbi an opportunity to cure any alleged breach, Akorbi may have done so, and the MSA would have continued.

59.     Based on the rates Akorbi was being paid under the MSA and the Fourth SOW before HelloFresh's immediate termination, Akorbi would have received payments from HelloFresh more than $75,000 during the required minimum 30 days. Had Akorbi cured any alleged breaches, Akorbi's revenues and resulting profits would have been more significant and could have continued for a substantial period.

60.     Similarly, had HelloFresh chosen to terminate without cause and provided at least the required 45-day notice, Akorbi would have received more than $75,000 payments under the MSA and Fourth SOW.

61.     Akorbi seeks recovery of these damages from HelloFresh.

62.     Akorbi also seeks exemplary damages from HelloFresh for its fraud.

63.     Akorbi also requests that the Court, in equity, order the recission of Amendment No. 1.

64.     If required, Akorbi will elect which remedy it will seek for this claim at the appropriate time.

## VII.
## BREACH OF CONTRACT

65.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

66.     The Court should order the recission of Amendment No. 1 as requested in Section VI. of this Complaint. With the recission of Amendment No. 1, the requirements to terminate the MSA and Fourth SOW are governed by the MSA's provisions.

67.     Paragraphs 3.1 and 20.5 of the MSA each require a minimum of 45-days prior written notice to the other party to terminate the MSA without cause.

68.     Paragraph 20.2 of the MSA also allows the termination of the MSA with less than 45-days' notice if certain specified events occur. However, such events require that the "Non-Defaulting Party" deliver written notice of the default to the "Defaulting Party" and allow a minimum of 30 days to cure the alleged breach.

69.     HelloFresh sent an e-mail to Akorbi on November 1, 2019, stating that it was immediately terminating the MSA and, by implication, the Fourth SOW. HelloFresh did not provide Akorbi with any opportunity to cure any alleged default. Nor did HelloFresh provide notice that HelloFresh would be terminating the MSA and Fourth SOW in 45 days.

70.     HelloFresh's actions breach at least Paragraph 20.2 or Paragraphs 3.1 and 20.5 of the MSA.

71.     Akorbi did not provide HelloFresh with either written notice or an opportunity to cure any purported breach because Akorbi was not aware at that time of all the facts behind HelloFresh's fraud by omission. Providing such notice and opportunity to cure now would be futile.

72.     As a result of HelloFresh's failure to properly terminate the MSA and Fourth SOW, Akorbi has been damaged in the amount of at least $75,000.

73.     Akorbi seeks recovery of these damages from HelloFresh.

74.     Akorbi also seeks to recover its attorneys' fees and expenses under Chapter 38 of the Texas Civil Practice and Remedies Code.

## VIII.
## DECLARATORY JUDGMENT

75.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

76.     An actual, present, and justiciable controversy has arisen between Akorbi and HelloFresh concerning the liability under the MSA and Fourth SOW for which Akorbi and HelloFresh have adverse legal interests.

77.     An actual, present, and justiciable controversy has arisen between Elahi and HelloFresh concerning whether and to what extent Elahi may be liable to HelloFresh in connection with the Underlying Lawsuits' allegations.

78.     The MSA provides, in relevant part, that HelloFresh will abide by the TCPA Telemarketing guidelines, as well as the guidelines set out in that MSA.

79.     Significantly, the First SOW required Akorbi to provide the Services through HelloFresh's Customer Relationship Management ("**CRM**") Platform.  This specifically included requiring that Akorbi utilize HelloFresh's "required data files (calling lists) … ." First SOW, Ex. 2 at p. 1. The Second SOW merely extended the First SOW and did not change this requirement. The Third SOW again specifically required that Akorbi use HelloFresh's CRM and "the required data files (calling lists) … ." Third SOW, Ex. 4 at p. 1. The Fourth SOW also contained language identical to that in the First and Third SOW's quoted above. Fourth SOW, Ex. 5 at p. 1. Amendment No. 1 does not directly address responsibility for data/calling lists, but it does require that Akorbi provide HelloFresh with information relating "to all leads provided by [HelloFresh] … ." Amendment No. 1, Ex. 6 at p. 2. The term "leads" means the same thing as "the required data

files (calling lists)" provided exclusively by HelloFresh. *Compare* Amendment No. 1, Ex. 6 at p. 2, *with* the First SOW, Ex. 2 at p. 1.

80.     HelloFresh had an obligation to investigate all phone numbers it was providing for the Services to determine if any would violate the TCPA if called. Then, HelloFresh had an obligation to remove those phone numbers from the call lists it provided for the Services. HelloFresh also had an obligation to continue investigating whether any of the phone numbers that it previously provided for the Services would result in a violation of the TCPA; and, if so, HelloFresh had an obligation to remove those numbers from the calling lists already provided for the Services.

81.     For each instance that HelloFresh delivered a call list, HelloFresh represented that the call list did not contain any phone numbers that would violate the TCPA if called using the Five9 system. To the extent HelloFresh delivered any call list that included phone numbers that would result in a violation of the TCPA by using the Five9 system, HelloFresh breached its contract with Akorbi and otherwise made an intentional or negligent misrepresentation to Plaintiffs. Each such breach or misrepresentation is a prior breach of the MSA and the respective statement of work, which relieves Plaintiffs of any liability.

82.     Neither the MSA nor any of the statements of work require or allow Akorbi to verify any information on HelloFresh's CRM, including HelloFresh's data/calling lists. The MSA and statements of work also do not require or allow Akorbi to update or otherwise change the information on HelloFresh's calling lists.

83.     The course of conduct between the parties otherwise reflected that HelloFresh had undertaken the sole responsibility to ensure that the calling lists which it was providing complied with the TCPA.

84.     The Demand Letter notes that Paragraph 16.2 of the MSA requires Akorbi to comply with the laws, rules, and regulations that apply to its business activities. By implication, HelloFresh is claiming that this section contractual obligates Plaintiffs to comply with the TCPA. This implication ignores, however, that Plaintiffs were not given the right or otherwise allowed to verify the information in HelloFresh's CRM. If violations of the TCPA occurred, it was solely due to using the phone numbers that HelloFresh was exclusively responsible for ensuring compliance with the TCPA.

85.     Given HelloFresh's obligations and Plaintiffs' lack of contractual rights and obligations regarding compliance with the TCPA, HelloFresh is solely responsible for, or in the alternative comparatively responsible for, any violation of the TCPA that may have resulted from any telemarketing calls to any numbers on the national do-not-call registry or failing to honor HelloFresh's internal do-not-call lists. HelloFresh is not entitled to indemnification from Akorbi for any damages it may have caused to the plaintiffs in the Underlying Litigation. Alternatively, HelloFresh's conduct with respect to the allegations in the Underlying Litigation relieves Akorbi from any indemnification obligations it may have had under the MSA.

86.     Paragraph 12.1 of the MSA contains limitations on Akorbi's indemnification liability to HelloFresh under the circumstances alleged in the Demand Letter. Specifically, Akorbi is not required to indemnify HelloFresh for any claim, action, or expenses unless they arose out of Akorbi's gross negligence.

87.     The Underlying Litigation only alleges actions and omissions on the part of HelloFresh. The Underlying Litigation does not allege any acts, much less gross negligence, by Akorbi. Moreover, there can be no allegations of gross negligence against Akorbi. The claims against HelloFresh are for alleged violations of the TCPA. HelloFresh had the sole responsibility

for determining what phone numbers should and should not be in its data/call lists. The mere dialing of a phone number provided by HelloFresh can never rise to the level of gross negligence. Accordingly, the indemnification obligations in Paragraph 12.1 of the MSA have not been triggered.

88.     Further, there is no common law indemnification applicable to the allegations in Underlying Litigation.

89.     Paragraph 12.1 also limits any indemnification obligation "to the amount paid by [HelloFresh] within the previous 12 months for the Services." MSA, Ex. 1 ¶ 12.1, at p. 7. That amount is substantially less than the $4,060,000 that HelloFresh appears to have demanded from Akorbi.

90.     Additionally, no contractual agreement to indemnify exists between HelloFresh and Elahi. Elahi is not a successor in interest to Akorbi in connection with the MSA. Akorbi did not assign any indemnification obligations to Elahi. There is also no common-law indemnification applicable to the allegations in Underlying Litigation. Elahi, therefore, has no obligation to indemnify HelloFresh, contractually or equitably.

91.     The United States Supreme Court is currently considering the issues presented in the case styled *Facebook, Inc.* v. *Noah Duguid, et al.*; Case No. 19-511. The primary issue in that appeal could be described as whether a device that can store and automatically call a phone without "*using a random or sequential telephone number*" violates the TCPA. Akorbi and Elahi anticipate that the U.S. Supreme Court will rule that such a dialing system does not violate the TCPA. The Five9 dialing system mandated by HelloFresh for the Services does not store and automatically call a phone without "*using a random or sequential telephone number.*" The use of the Five9 dialing system required by HelloFresh therefore did not violate the TCPA.

92.     Based upon the foregoing, Akorbi and Elahi request that this Court, pursuant to 28

U.S.C. § 2201, declare—not necessarily in the following order—that:

a.      Akorbi is responsible to HelloFresh only for a claim, action, or expenses resulting from, and to the extent of, the gross negligence of Akorbi;

b.      There are no allegations in the Underlying Litigation that Akorbi was grossly negligent;

c.      There have been no judicial findings binding on Akorbi that Akorbi was grossly negligent in connection with the provision of Services;

d.      There are no allegations in the Underlying Litigation that HelloFresh, through Akorbi, was grossly negligent;

e.      There have been no judicial findings binding on Akorbi that HelloFresh, through Akorbi, was grossly negligent;

f.      Akorbi did not commit gross negligence in connection with the provision of the Services;

g.      Because Akorbi did not commit gross negligence in connection with the provision of Services, it is not obligated to indemnify HelloFresh under the MSA for any settlement or judgment HelloFresh pays to the plaintiffs in or any expenses related to the Underlying Lawsuit;

h.      Akorbi does not owe HelloFresh equitable indemnification from any claim, action, or expenses resulting from, or to the extent of, any of the claims alleged in the Underlying Litigation;

i.      HelloFresh had contractual and legal responsibilities for investigating whether any of the phone numbers on the calling lists it provided for the Services would result in a violation of the TCPA;

j.      HelloFresh had contractual and legal responsibilities for investigating whether any of the phone numbers on the calling lists it provided for the Services were on the national do-not-call registry;

k.      HelloFresh had contractual and legal responsibilities for investigating whether any of the phone numbers on the calling lists it provided for the Services were on its internal do-not-call list;

l.      HelloFresh is solely, or in the alternative, comparatively responsible for the damages claimed by the plaintiffs in the Underlying Litigation that may have resulted from making telemarketing calls to numbers on the national do-not-call registry or failing to honor HelloFresh's internal do-not-call lists;

m.    HelloFresh had contractual and legal responsibilities for investigating whether any of the phone numbers on the calling lists it exclusively provided for the Services would result in a violation of the TCPA's prohibition for using auto-dialing systems;

n.    The Five9 dialing system that HelloFresh mandated to be used does not, as used by Akorbi and Elahi, "store or produce telephone numbers to be called, *using a random or sequential telephone number* …." Therefore, the use of the Five9 system did not violate the TCPA by calling a phone using cellular service. Accordingly, neither Akorbi nor Elahi owe HelloFresh any indemnification or other reimbursement obligation for any amounts attributable to calls made to phones using cellular service that do not violate the TCPA in any different manner;

o.    In the alternative to Paragraph 92.n. above, HelloFresh is solely or, in the alternative, comparatively responsible for the damages claimed by the plaintiffs in the Underlying Litigation that may have resulted from making telemarketing calls using the Five9 dialing system to phone numbers using cellular service. HelloFresh is therefore solely responsible for the settlement and expense in the Underlying Litigation or, in the alternative, any amounts Akorbi or Elahi may be responsible for must be reduced by HelloFresh's comparatively responsible for such amounts.

p.    HelloFresh breached the MSA and the respective statement of work each time it delivered a call list that contained one or more phone numbers which would violate the TCPA when dialed. Each such breach/misrepresentation was a prior breach of the MSA and the respective statement of work which relieves Plaintiffs of any liability for any calls made using such phone numbers;

q.    No contractual indemnification exists between Elahi and HelloFresh covering the allegations in the Underlying Litigation;

r.    Elahi does not owe HelloFresh equitable indemnification from any claim, action, or expenses resulting from, or to the extent of, any of the claims alleged in the Underlying Litigation;

s.    Elahi is otherwise not liable to HelloFresh for any portion of the settlement paid in the Underlying Litigation or any expenses related to such litigation;

t.    The Underlying Litigation has not resulted in a fully and fairly litigated determination that HelloFresh is liable under the TCPA to any of the class-action plaintiffs for any amount;

u.  HelloFresh cannot rely upon *res judicata* or collateral estoppel to claim that it was liable to all or any particular class-action plaintiff in the Underlying Litigation, or that it would have owed any specific amount if it was liable;

v.  HelloFresh did not contest any aspect of the class-action claims, including numerosity, commonality, typicality, and adequacy. HelloFresh therefore cannot rely upon *res judicata* or collateral estoppel to claim that a class would have been certified had it contested certification;

w.  The settlement amount paid by HelloFresh in the Underlying Litigation was not reasonable;

x.  In the unlikely event that there is a determination that indemnification or other reimbursement is required to be made to HelloFresh by Akorbi or Elahi for the settlement paid to the plaintiffs in the Underlying Action, Akorbi and Elahi request that the Court determine the amount owed based on all limitations, contractual and legal, to any such liability.

## IX.
## CONDITIONS PRECEDENT

93.  All conditions precedent has been performed, occurred, or been waived.

## X.
## PRAYER FOR RELIEF

Akorbi BPO, LLC and Elahi Enterprises, Inc. respectfully request that Grocery Delivery E-Services USA Inc., doing business as HelloFresh, be cited to appear and answer and, on final trial, that the Court:

a.  Enter a Judgment:

i.  finding that HelloFresh committed fraud by omission in connection with Amendment 1, awarding Akorbi damages resulting from such fraud, and ordering that Amendment 1 be rescinded *ab initio*;

ii.  awarding Akorbi exemplary damages due to HelloFresh's fraud by omission;

iii.  finding that HelloFresh breached the MSA by terminating and awarding Akorbi damages resulting from such breach;

iv.  declaring the rights, responsibilities, and obligations of the parties hereto as requested herein;

v.  awarding Akorbi its attorneys' fees, expenses, costs of court, and prejudgment and post-judgment interest at the highest rate allowed by law; and

b.     Grant such other and further relief in law or equity to which Plaintiffs may be justly
entitled.

**Dated:     February 17, 2021**                 Respectfully,

/s/ *Bryan Haynes*

**BRYAN HAYNES**
Texas Bar No. 09283520
Bryan.Haynes@Klemchuk.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
Christian.Cowart@Klemchuk.com

**KLEMCHUK, L.L.P.**
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone:     (214) 367-6000
Facsimile:     (214) 367-6001

**COUNSEL FOR PLAINTIFFS**
**ELAHI ENTERPRISES, INC. AND**
**AKORBI BPO, LLC**